CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 1 6 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TONI ELITHARP-MARTIN,　　　　　　)
　　　　　　　　　　　　　　　　　　)　　Civil Action No. 7:14-CV-00231
　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　**MEMORANDUM OPINION**
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　By: Hon. Glen E. Conrad
PULASKI COUNTY SCHOOL BOARD,　)　　Chief United States District Judge
　　　　　　　　　　　　　　　　　　)
　　　Defendant.　　　　　　　　　　)

Plaintiff Toni Elitharp-Martin, former Director of Special Education for Pulaski County Schools, filed this lawsuit against Defendant Pulaski County School Board ("PCSB"), alleging that she was sexually harassed by Dr. Rodell Cruise, a school board member and parent, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et. seq. The case is presently before the court on PCSB's motion to dismiss. For the following reasons, that motion will be granted in part and denied in part.

### Factual and Procedural Background

The following facts, taken from Elitharp-Martin's amended complaint, Docket No. 19, documents incorporated into the amended complaint by reference, and public documents of which the court may take judicial notice, are accepted as true for purposes of the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

During the time period relevant to this action, Dr. Toni Elitharp-Martin worked as the Director of Special Education for Pulaski County Schools. In March 2009, Dr. Rodell Cruise, a then-member of the Pulaski County School Board, began to sexually harass her. For example, Cruise repeatedly asked Elitharp-Martin to enter into a sexual relationship with him, told her that

she needed medication to make her more attracted to him, told her that he only wanted to sleep with white women (Elitharp-Martin is Caucasian; Cruise is African-American), and suggested that they travel to Richmond, Virginia together to engage in a sexual relationship there. On one occasion, Cruise ran his hand up Elitharp-Martin's dress. Cruise also told her that she "had a lot to lose, and that [she] would never become Superintendent of [PCSB] unless she had a sexual relationship with him." Am. Compl. ¶ 10. Elitharp-Martin repeatedly rejected Cruise's sexual advances.

Cruise left the school board on or around January 1, 2012. Cruise continued to have contact with Elitharp-Martin, however, because his son was a student in the Pulaski County special education program. For example, Cruise would request meetings with Elitharp-Martin purportedly to discuss issues concerning his son, and then use those meetings to harass her. Cruise also continued to threaten Elitharp-Martin by telling her that she had "a lot to lose;" that he would "go to the top" to report problems in her department; and that he would report her for disclosing confidential information and misusing special education funds if she attempted to "dirty his name." Am. Compl. ¶ 13. Cruise's harassment continued until his son graduated from high school in May 2013.

Elitharp-Martin alleges that she repeatedly complained about Cruise's harassment to PCSB officials, including school board members, the human resources director, and the superintendent. These officials acknowledged that Cruise had a reputation as a "predator" and a "bully." Am. Compl. ¶ 15. The board also considered "bann[ing] Dr. Cruise from school grounds," and sent the "sheriff to talk with [Elitharp-Martin] about [her] concerns." Am. Compl. ¶ 16. Elitharp-Martin was not promoted to assistant superintendent or superintendent in March 2010 or August 2012, even though she was well qualified for those positions. She alleges that she was denied those promotions because, "[a]s a result of [her] rejection of [his] sexual advances," Cruise "refused to vote to

2

promote [her]" in 2010 and made "false and defamatory statements" about her to the school board in 2012. Am. Compl. ¶ 17.

On June 17, 2013, Elitharp-Martin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Council on Human Rights. She received a Notice of Right to Sue from the EEOC dated March 7, 2014, and commenced this action on May 6, 2014. PCSB filed a motion to dismiss, or in the alternative, for summary judgment on July 4, 2014, Docket No. 4. In that motion, PCSB argued that Elitharp-Martin's original complaint, which failed to include any allegations of harassment occurring after Cruise left his position on the school board, should be dismissed because Elitharp-Martin failed to file an EEOC charge within the time period required by law.

The court held a hearing on PCSB's motion on August 19, 2014. After that hearing, the court granted Elitharp-Martin fourteen days to amend her complaint to include the harassment that allegedly took place after Cruise left the school board, and allowed PCSB ten days thereafter to file additional argument or evidence with respect to its motion. See August 19, 2014 Order, Docket No. 16. Elitharp-Martin filed an amended complaint on August 25, 2014, Docket No. 19. The parties then filed supplemental briefing on PCSB's motion. See Docket Nos. 20, 22, 23. Neither party requested an additional hearing in accordance with the court's order, so the motion is now ripe for review.

## Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and make all reasonable inferences in the plaintiff's favor. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court need not accept

3

as true any legal conclusions disguised as factual allegations, however.  See Ashcroft v. Iqbal, 556 U.S. 662, 679–81 (2009).  The plaintiff's allegations need not be detailed, but she must offer more than "labels and conclusions" or a "formulaic recitation of the elements of [the] cause of action" in order to survive a motion to dismiss.  Twombly, 550 U.S. at 555.  Ultimately, the complaint's allegations must "be enough to raise a right to relief above the speculative level."  Id.

The court has discretion to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment in order to consider matters outside the pleadings.  See Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 56.  Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Conversion is not required, however, when the court considers only exhibits attached to the complaint, or documents that are integral to the complaint or incorporated by reference, as long as the authenticity of those documents is not in dispute.  See Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006) (citing Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001)).

## Discussion

Elitharp-Martin has filed suit for sexual harassment.  Federal courts recognize two types of sexual harassment claims cognizable under Title VII: quid pro quo claims and hostile work environment claims.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751-55 (1998).  Quid pro quo harassment occurs when an employee's acceptance or rejection of a supervisor's sexual advances or harassment affects some tangible aspect of her employment.  See Katz v. Dole, 709 F.2d 251, 254 (4th Cir. 1983).  Hostile work environment claims, on the other hand, arise when an employee experiences harassment that is so severe and pervasive that it alters her work environment generally.  See Ellerth, 524 U.S. at 752.  Ultimately, these categories simply "illustrate the

4

distinction between cases involving a threat which is carried out and offensive conduct in general," both of which violate Title VII. Id. at 753.

In her amended complaint, Elitharp-Martin alleges that Cruise kept her from being promoted after she rejected his sexual advances, and that his repeated harassment created a hostile work environment. Thus, her single count of sexual harassment can be fairly characterized as encompassing both quid pro quo and hostile work environment claims. In moving to dismiss the amended complaint, PCSB first argues that Elitharp-Martin's quid pro quo claim fails because she did not timely file a charge of discrimination with the EEOC. PCSB also contends that the EEOC charge and amended complaint both fail to state a claim for hostile work environment. The court will consider each argument in turn.

## I. Quid Pro Quo Harassment Claim:

PCSB first argues that Elitharp-Martin's quid pro quo claim must be dismissed, because she failed to timely file a charge of discrimination with the EEOC as to that claim. It is well-established that before a plaintiff can bring an action under Title VII, she must first file a charge with the EEOC within a certain period of time. Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)). In a "deferral state" like Virginia, the charge must be filed within 300 days of the last discriminatory act alleged. Edelman v. Lynchburg College, 300 F.3d 400, 404 (4th Cir. 2002). Failure to timely file a charge "precludes relief under Title VII." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 422 (4th Cir. 2005); see also Chacko, 429 F.3d at 509 ("An individual cannot bring suit until he has exhausted the administrative process.").

The amended complaint alleges that Elitharp-Martin was denied promotional opportunities with PCSB after she refused Cruise's sexual advances. Specifically, Elitharp-Martin alleges that Cruise refused to vote to promote her to superintendent when he served on the school board in

5

March 2010. In addition, she alleges that Cruise made defamatory statements about her in 2012, which influenced the board's decision not to promote her to superintendent or assistant superintendent on August 8, 2012. See Am. Compl. ¶ 17. Because these promotion decisions occurred more than 300 days before Elitharp-Martin filed her EEOC charge on June 17, 2013, see EEOC Charge, Def.'s Br. in Support of Mot. to Dismiss Ex. A, Docket No. 5-1, PCSB argues that her quid pro quo claim is time barred. In response, Elitharp-Martin asserts that her charge was timely filed with respect to PCSB's failure to promote her in 2012, because the individuals selected for promotion did not assume their new positions on August 22, 2012 – a date within the 300-day filing period. Alternatively, Elitharp-Martin argues that her claim is subject to equitable tolling.

The court agrees that Elitharp-Martin's quid pro quo claim is untimely. Cruise's alleged decision not to vote for Elitharp-Martin's promotion to superintendent in March 2010 clearly occurred more than 300 days before she filed her EEOC charge on June 17, 2013. The school board's August 8, 2012 decision also falls outside this 300-day window. The limitations period for filing an EEOC charge "runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." Price v. Litton Bus. Sys., Inc., 694 F.2d 963, 965 (4th Cir. 1982). The school board announced its promotion decisions at an open school board meeting on August 8, 2012. See PCSB Mtg. Mins., Def.'s Br. in Support of Mot. to Dismiss Ex. B, Docket No. 5-1. This public announcement provided notice to Elitharp-Martin that she had been passed over for a promotion, triggering the limitations period for any quid pro quo claim based on that decision. This is true regardless of when the individuals who received promotions actually took on those new roles. Elitharp-Martin's EEOC charge was therefore filed too late with respect to any quid pro quo claim based on PCSB's failure to promote.

6

Elitharp-Martin argues that the doctrine of equitable tolling should apply to extend the limitations period in this case, but the court is constrained to disagree. "Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Thus, "the period for filing a charge with the EEOC in Title VII cases may be tolled" when the defendant's misconduct or "exceptional circumstances" outside the plaintiff's control prevent her from filing within the limitations period. Moody v. Bayliner Marine Corp., 664 F. Supp. 232, 235 (E.D.N.C. 1987); see also Woodyard v. Gal-Tex Hotel Corp., No. 7:07-CV-00540, 2008 WL 2853637, at *3 n.7 (W.D. Va. July 22, 2008) ("A plaintiff is entitled to equitable tolling if she presents (1) extraordinary circumstances, (2) beyond her control or external to her own conduct, (3) that prevented her from filing on time."). Equitable tolling "must be reserved for those rare instances where… it would be unconscionable to enforce the limitation period…[because] gross injustice would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

Elitharp-Martin asserts that she suffers from post-traumatic stress disorder as a result of childhood sexual abuse, and that her mental condition prevented her from coming forward to report Cruise's harassment promptly. See Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at 7, Docket No. 8. "Mental incapacity or disability, in appropriate circumstances, can rise to the level necessary to trigger equitable tolling." Robinson v. Hinkle, 610 F. Supp. 2d 533, 535 (E.D. Va. 2009). Equitable tolling is only appropriate in cases of "profound mental capacity," however. United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004); see Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir. 1998) (stating that equitable tolling based on mental condition is reserved for "exceptional circumstances, such as institutionalization or adjudged mental incompetence"). A

7

plaintiff seeking equitable tolling due to mental incapacity must show that her condition "'prevented [her] from understanding and maintaining [her] affairs generally and from complying with the deadline [s]he seeks to toll.'" Nesbit-Harris v. Jackson, No. 3:07-CV-696, 2008 WL 2329173, at *4 (E.D. Va. June 3, 2008) (quoting Jessie v. Potter, 516 F.3d 709, 714-15 (8th Cir. 2008)).

The amended complaint belies any argument that equitable tolling should apply in this case. During the time period in which Cruise allegedly harassed her, Elitharp-Martin worked in a high-level position as the Director of Special Education for Pulaski County Schools. Am. Compl. ¶ 8. She also alleges that she was "well qualified for promotion to the position of assistant superintendent or superintendent" during that period. Id. at ¶ 17. Although the court is sympathetic to Elitharp-Martin's traumatic childhood experiences and the lasting impact those experiences may have had on her, the court does not believe that Elitharp-Martin could be both well-suited to overseeing an entire school district as superintendent and also incapable of "understanding and maintaining [her] affairs generally," as is required for equitable tolling to extend the limitations period in this case.

Because Elitharp-Martin filed her EEOC charge more than 300 days after she received notice that PCSB had not selected her for promotion, and because equitable tolling does not apply to extend that limitations period, that charge was untimely as to any quid pro quo claim based solely on the school board's failure to promote her. To the extent that the amended complaint alleges such a quid pro quo claim, that claim will be dismissed.

## II. **Hostile Work Environment Claim:**

Elitharp-Martin's amended complaint also alleges that Cruise's harassment "created a hostile and offensive work environment" from 2009 and until Cruise's son graduated in 2013. Am. Compl. ¶ 9-12. In moving to dismiss this claim, PCSB asserts that Elitharp-Martin failed to

8

complain about a hostile work environment in her EEOC charge, and that the amended complaint fails to adequately state a claim for hostile work environment. The court considers both arguments below.

a. *The EEOC Charge:*

PCSB first argues that Elitharp-Martin failed to articulate a hostile work environment complaint in her EEOC charge, precluding litigation of that claim here. A plaintiff's EEOC charge defines the scope of her right to file suit in federal court. See Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). A charge must identify the parties and "describe generally the actions or practices complained of." Chacko, 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b)). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Jones, 551 F.3d at 300 (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)). A plaintiff's failure "to exhaust administrative remedies...deprives the federal courts of subject matter jurisdiction over [her] claim." Id.

This exhaustion requirement furthers the important goals of providing notice to the employer and encouraging conciliation between the parties. See Johnson v. Portfolio Recovery Assocs., LLC, 682 F. Supp.2d 560, 569-70 (E.D. Va. 2009). Nonetheless, exhaustion "should not become a tripwire for hapless plaintiffs." Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012). "Documents filed by an employee with the EEOC should [therefore] be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." Id. (citing Fed. Express Corp. v. Holowecki, 552 U.S. 389, 406 (2008)).

In this case, PCSB contends that Elitharp-Martin's EEOC charge contains allegations relating only to the school board's failure to promote, and that it fails to mention that Cruise's

9

harassment created a hostile work environment that continued after he left the school board in January 2012. Examination of the charge itself suggests otherwise. On her charge, Elitharp-Martin marked the boxes signifying that her complaint was based on sex, retaliation, and sexual harassment. See EEOC Charge, Def.'s Br. in Support of Mot. to Dismiss Ex. A, Docket No. 5-1. She also marked the box for "continuing action," and indicated that the alleged harassment took place from March 2009 until June 2013 – long after Cruise served on the board. Id. The charge's narrative statement also illustrates the continuing nature of Elitharp-Martin's complaint. It reads:

> Since March 2009, I have been harassed by a now former school board member, Dr. Rodell Cruise…For example, he threatened that unless I entered into a sexual relationship with him, I would never become superintendent…. The harassment took its toll on me and created an extremely hostile work environment. I believe that the harassment was a reason for me not being hired as superintendent in March 2010… [and August 2012]. Through all this, Dr. Cruise has continued to pursue a sexual relationship with me.

Id. This narrative is replete with temporal language suggesting that Cruise's unwelcome actions occurred repeatedly over time, including after he left the school board. The narrative goes so far as to explicitly state that Cruise's actions "created [a]…hostile work environment." Particularly given that the charge must be liberally construed to protect Elitharp-Martin's rights, the court concludes that Elitharp-Martin's hostile work environment claim is "reasonably related" to the contents of her EEOC charge. She has therefore exhausted her administrative remedies with respect to that claim.[*]

b. *The Amended Complaint:*

PCSB also argues that Elitharp-Martin fails to allege sufficient facts supporting her hostile work environment claim to survive a motion to dismiss. Specifically, PCSB contends that the

---

[*] The court also notes that the EEOC charge is timely with respect to the hostile work environment claim so long as it was filed within 300 days of at least one act contributing to the alleged hostile environment. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."). Elitharp-Martin has alleged as much in her amended complaint. See Am. Compl. ¶ 12.

10

amended complaint fails to articulate a basis for holding PCSB liable for Cruise's third party harassment. The court disagrees.

To recover under Title VII for a hostile work environment, a plaintiff "must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." Ocheltree v. Scollon Productions, Inc., 335 F.3d 325, 331 (4th Cir. 2003). An employer is liable for a hostile work environment created by third parties or coworkers "if the employer knew or should have known of the harassment and failed 'to take prompt remedial action reasonably calculated to end the harassment.'" Freeman v. Dal-Tile Corp., 750 F.3d 413, 420 (4th Cir. 2014) (citing Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995)).

Elitharp-Martin states a valid hostile work environment claim in her amended complaint. She alleges that Cruise repeatedly and graphically attempted to coerce her into a sexual relationship, which she "steadfastly refused." Am. Compl. ¶¶ 10-11. She describes Cruise's conduct as threatening and intimidating. Id. at ¶ 13. Moreover, Elitharp-Martin sets forth a specific basis for imputing liability to PCSB. Elitharp-Martin states that she "complained repeatedly about Dr. Cruise's sexual advances to officials with positions of authority…including but not limited to the chairman and vice-chairman…and other school board members, [the] human resources director, the Superintendent…and other persons," and that these officials "acknowledged that they were aware of [her] complaints" and Cruise's behavior. Id. at ¶ 14. The allegations in the amended complaint go beyond mere "labels and conclusions" and provide more than "a formulaic recitation of the elements" of a hostile work environment claim. Twombly, 550 U.S. at 555. Elitharp-Martin's hostile work environment thus survives PCSB's motion to dismiss.

11

**Conclusion**

For the reasons stated, PCSB's motion to dismiss is granted in part and denied in part. Elitharp-Martin's quid pro quo harassment claim based on PCSB's failure to promote will be dismissed, and the case will proceed on her hostile work environment claim only. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 16th day of October, 2014.

_____

Chief United States District Judge

12